Mr. Sawyers, may it please the court. Good afternoon, Jeff Swyers of Slevin and Hart in Washington, D.C. for the Appellant Fund and its Board of Trustees. In this case, we have executed and binding contracts under which for certain employees, the contractors agreed to participate in and make contributions to this ERISA pension fund. Yet, the District Court held that the fund has no recourse under ERISA. Now, we contend that the District Court made a variety of errors in reaching this result. I would like to focus on four, any one of which is a basis for reversal. First is the fund's claim in Count 1 that the EPP provides some of the terms of what is undisputedly an ERISA plan and does so in conjunction with any governing plan documents, including both the plan document and the trust agreement. The District Court erred here because rather than evaluating whether the EPP provides some of the terms of the plan, it instead evaluated whether the EPP is by itself an ERISA plan, a position that the fund has never taken. In Grimo versus Blue Cross Blue Shield, this court recognized that some essentials of a plan can be adopted explicitly or impliedly from sources outside of the plan. In that case, the court gave as an example an insurance company's procedure for processing claims. Given the detailed allegations in the amended complaint regarding the importance of the EPP to the fund, its trustees, and its participants, had the District Court applied the correct analysis and abided by the standards of Rule 12b-6, as well as afforded the trustees deference in their interpretation of their own plan, the court should have concluded that the fund stated a plausible claim here. Second is the District Court's dismissal of Count 2, which is that in addition to the EPP providing terms of the plan, the plan document itself contains an express requirement for employers to make contributions pursuant to any written agreement requiring contributions to the fund. Here the fund alleges that this requirement is met in two ways. First, the express contribution requirement in the EPP, and second, the fact that the employers in their contracts agreed to sign participation agreements with the fund. The District Court dismissed the fund's claim here because the agreements were not with the union, despite the fact that such a requirement is absent from that provision. This goes well beyond the District Court's role on a 12b-6 motion. As to the participation agreements themselves, the District Court's holding is directly contrary to this court's holding in the Teamsters v. UPS case, where the court held that when one signs an express agreement to enter into a participation agreement, that participation agreement is deemed signed. That should have been the holding here. The effect of the District Court's holding here is that a direct contractual obligation between an employer and an ERISA fund to participate in and make contributions to the fund is not actionable under ERISA. Such a holding should not stand. The last two errors relate to the fund's claim that the defendants were fiduciaries. There are two ways to become a fiduciary under ERISA. One, by being a named fiduciary, or two, by rendering oneself a functional fiduciary. In turn, there are two ways to become a functional fiduciary under ERISA. One, by exercising discretion and control over a plan asset, or two, by exercising discretion or control over the management and administration of a plan. As to the defendant DOE, the fund alleged functional fiduciary status on both bases. Yet, the District Court dismissed the fund's claim that the DOE was a functional fiduciary by exercising control over the management and administration of the fund because it was not a named fiduciary. However, the fund has never alleged in this case that any of the defendants are named fiduciaries. So here, the District Court analyzed the wrong question and should be reversed here. If the District Court's decision on this issue is allowed to stand, you have incorrect law that you have to be a named fiduciary in order to be a functional fiduciary, which simply is not the law. Finally, the fund alleged that all defendants rendered themselves functional fiduciaries by exercising discretion and control over plan assets based on a provision in the trust agreement that renders all monies accrued to the fund a plan asset. As cited in the briefing, courts have repeatedly held that this or similar language is sufficient to render unpaid contributions plan assets because accrued means due and owing. Yet, the District Court held that the contributions at issue could not be due and owing because of its holding that the fund did not have an ERISA claim for them. Of course, we disagree with those holdings, but aside from that, the District Court's conclusion here is still incorrect because the fund alleged a state law third-party beneficiary contract claim below and a claim which they will pursue if it's remanded to the District Court and a claim which they will pursue in state court if it's not remanded, which makes the fund's plan asset claim plausible. Thus, the District Court's holding here was erroneous in three ways. First, it's contrary to the weight of authority by other courts that have interpreted virtually identical trust provisions. Second, the District Court identified what was at most an ambiguous provision, which is the opposite of the court's role on a motion to dismiss. Lastly, in ERISA cases like this, because the trustees are empowered to interpret the trust agreement, the court's role here was to defer to the trustees' interpretation so long as it was reasonable. Given that the case was decided at the pleading stage without any evidence, the court just had no basis to conclude that the trustees' interpretation here was unreasonable. Are there any cases where courts have treated an EPP with a third-party contractor as part of an ERISA plan? Your Honor, no, not specifically an EPP. It's my understanding that the EPP and particularly this one is quite unique. I guess my follow-up question is, Silverman said that only the plan document and the summary description have been recognized as setting forth plan terms. I'm wondering how you reconcile that with your position that an EPP can be added to that small list. Your Honor, in Silverman, the court there recognized that ERISA does not specify or dictate where one finds terms of a plan. It leaves that open. It did recognize that courts have recognized at least two documents as being part of a plan, but it doesn't conclude that those are the only documents. Silverman is really an opposite to this case because in Silverman, the issue on appeal was the district court's holding that a particular CBA itself established an ERISA plan. That's what the district court held, and the court overruled it. The issue here is, of course, not whether the EPP establishes an ERISA plan. It's undisputed that we have an ERISA plan here. The issue is simply, does the EPP form or can it be a part of that already established plan? Excuse me, you have one minute left. Thank you. I guess the defendant's argument is that under Silverman, if a CBA can't be a plan document, then sort of a fortiori, an EPP can't either. Your Honor, in Silverman, to the extent that the court talked about establishing or providing terms of an already existing plan, it didn't hold that a CBA can never in any circumstances be a plan or provide terms of a plan. It was very specific that that particular CBA, under the facts alleged, was not. It didn't hold that a CBA and no case can ever be a plan term or, for that matter, establish a plan. That was not the holding. It's a fact and circumstances test, and that was made clear. I see my time is up. Judge LaValle, I have a question for you about the issue of becoming a fiduciary by virtue of exercising discretion over accrued assets of a plan. I'm a little bit confused by this issue, and I want to propose a hypothetical in which, say, the plan occupies offices for doing its business and maintaining its records. In the course of occupying these offices, it has a dispute with somebody who contracts to sell furniture to the plan for the offices. Let's say it gets a judgment against somebody who had contracted to sell desks for the offices and sold defective desks. At that point, that entity that sold the defective desks owes money to the plan because of something having nothing to do with the administration of a plan but has to do with a contractual or tort liability or something like that and unrelated to the operation of the plan. It seems to me that under the arguments that you're making, that person would be, in your terms, a fiduciary of the plan because it exercises discretion over accrued assets of the plan. Is that correct? Would that person be a fiduciary of the plan because of exercising discretion over plan assets? If not, doesn't that suggest some problems with your argument? Your Honor, first of all, I think functional fiduciary, I think I know, is a facts and circumstances question. I think the problem there is, as Your Honor mentioned, that in that case, the role of the office people really would have, in terms of exercising discretion over the plan, the question there would be, did they actually exercise control over something that really had no relationship to the plan? Well, they exercised discretion over assets that were accrued over money that was an accrued asset of the plan. So why doesn't that come within, why doesn't that, on your argument, why doesn't that come within the definition that would make them a fiduciary? Yes, I think that they would. I think under the terms of our plan, that that would be a planned asset and then they would run the risk of becoming a fiduciary, Your Honor. Run the risk of? They would render themselves likely, I hedge because it's a facts and circumstances test, but yes, I think that they would render themselves a functional fiduciary. So the plan could sue them under ERISA? The plan could sue them in federal court under ERISA for a dispute having to do with office furniture? At that point, Your Honor, it would be a dispute having to do with a plan asset. And they have that right under ERISA, Your Honor. Judge Park, any questions? No, thank you. All right, so we'll hear from the appellees. There are three different lawyers for the Department of Education. Ms. Melissa Hill. Yes, Your Honor. Thanks very much and good afternoon. May it please the court. At the outset, I think it's important to know that the question of whether the DOE, the Department of Education, has a contractual obligation to contribute to the pension fund has been squarely decided and rejected by this court. And it's not at issue here. And rather, the remaining claims against the DOE all hinge on the question of whether plaintiffs have adequately alleged that the New York City Department of Education, the largest public school district in the country, can somehow be converted to an ERISA fiduciary to the fund and thus subject to some of the highest duties known to law. And I would submit to the court that even accepting all the plaintiff's allegations as true, it cannot. And I think Judge LaValle's hypothetical that Your Honor just presented to Mr. Swires is spot on and demonstrates exactly the flaw in the fund's argument and why the relationships here are too attenuated to render either the alleged unpaid contributions plan assets, or more importantly, as it relates to the Department of Education, to render the DOE a functional fiduciary with respect to the fund. The district court correctly rejected this unprecedented and frankly impermissible attempt to expand ERISA liability, again, exactly along the lines that Your Honor is suggesting it could be expanded if we accept plaintiff's premise. I will also say in response to Judge Park's questions that I think the district court did correctly find that neither the school bus contracts themselves nor the EPPs contained within them could constitute an ERISA plan or provide terms of the plan at issue here. And that much is clear from the face of the EPPs, but I would also want to note what the fund ignores and what the district court noted on page, the supplemental appendix, page 12, is this court's standard in the Pasternak case, which looks to the primary purpose of a document when you're determining whether something constitutes or provides terms of an ERISA plan. And the district court correctly found that the primary purpose of the school bus contract is certainly not to provide retirement income. It's to provide school bus transportation services. Indisputably, on its face, the contracts and the EPPs are not ERISA plans. And then the district court correctly found that plaintiffs failed to plausibly allege that the DOE exercised discretion or control over the management or administration of the fund or its assets. And I would say the district court correctly evaluated whether plaintiffs alleged that the DOE was a functional fiduciary under ERISA, and plaintiffs' arguments to the contrary are plainly incorrect. For example, the district court analyzed whether the fund had adequately alleged the DOE acted as a fiduciary, clearly focusing on function over title. And importantly, the precedent that the district court relied on in finding plaintiffs' allegations insufficient arose exclusively in the context of functional fiduciary status. We have one minute left. Thank you. First, with respect to Verity v. Howe, a leading Supreme Court decision, which is on page 17 of the special appendix, the court there evaluated functional fiduciary activity. So too did this court in Allen v. Bank of America and the Southern District in Fletcher v. Convergex, both cited by the district court on page 15 of its opinion, and both of which considered whether defendants, by virtue of alleged conduct in relation to certain ERISA plans, could be deemed functional fiduciaries to the plan. So to suggest that the district court somehow didn't consider functional fiduciary status when all of the authority that it relied on spoke to only functional fiduciary status is simply wrong. And that the district court didn't catalog each of the plaintiffs' sufficient allegations doesn't mean that the court did not consider them. I think I heard a question coming in, and I didn't want to sneak over one of the judges. Would any of this change, Judge LaValle, if the state court had granted a declaratory judgment to the effect that this is a third-party beneficiary contract and that the plan is the third-party beneficiary? I think that's a good point. Sorry. Go ahead. I was going to say, Judge LaValle, I think that's a good question, and I think the answer is no. It would not change as to the question of whether the Department of Education would be an ERISA fiduciary or have discretion or control over plan assets or discretion or control over plan administration or plan management. I think your Honor is right that the question about whether or not the contract had been breached or had an obligation to execute the participation agreement or that the fund could be a third-party beneficiary is not a question that's presented on this appeal or to this court. But I don't think that the analysis would change as to whether or not the Department of Education exercised, even under the allegations that plaintiffs assert, exercised sufficient discretion or control over plan assets or over plan management. So if I understand correctly, the result reached by the district court could be correct, but nonetheless, a state court judgment on third-party beneficiary contractual liability could change the result in the sense of requiring the contractors to pay the contributions. They would be required, the contractors could still be required by a state court to pay the contributions which are sought in this case, but that would be under contract law, state law, and not under ERISA. Well, I think there's two questions that would have to be answered, and I think the first is what the appropriate remedy would be for a breach. If the fund could successfully assert a viable breach of contract claim in the district court, I think there would be a different claim against the contractor as it would be against the DOE because the alleged conduct is different and the alleged breach would then be different. But then the question is, what's the remedy? And according to the fund, the remedy is that the DOE should have forced the contractors to sign a participation agreement. They claim that there is a standard participation agreement that provides these terms, but we haven't seen it.  I think they would have to demonstrate that under whatever participation agreement needed to be signed could then bind the contractors to some contractual obligation to the fund. And then perhaps that, assuming that those things happened as part of the remedy for that case, then perhaps there would be a claim for ERISA contributions. But I don't think a remedy at the district court would be ERISA contributions or contributions to the pension plan. I think as stated, that claim would be preempted, but also I don't think that's exactly what the fund is asserting here, as I understand it. So then, is it correct that if we rule in favor of you and the contractors affirming the district court decision, we might perhaps make clear that this ruling does not foreclose liability of either DOE or the contractors on a contract theory under state law? It only rules on ERISA liability. I think that's correct. And I think whether or not that liability could lie as to any of the contractors or the Department of Education would be determined by whatever claim would be asserted in a state court. And I think both parties would have valid defenses to those claims, some of which have been addressed here like preemption and some of which are not at issue here. Thank you very much, Ms. Hill. Let's hear from Richard Millman for Allied Transit. May it please the court. Thank you, Your Honors. Good afternoon. And I'm appearing on behalf of Allied and Jovaz just to get more specific of our clients, both contractors. So I would like to, if I may, I'd just like to address some issues that were raised by the fund and also briefly some issues raised by co-counsel regarding certain issues that were raised and inquired by the court. The fund had stated, Your Honors, that they have discretion in certain definitions on how their fund trust documents and plan are defined and how it's applied. But the definitions, in accordance with Section 515 of ERISA, are very clear in the fund's documents, both the trust documents and the plan documents. And they define, you know, contributions to the fund in their trust documents as contributions of the employer shall be made in amounts set forth in collective bargaining agreements or other written agreements between the employer and the union and any amendments there to. So it's clear. It's clear on this. It's clear on the Section 515 of ERISA. It's clear on the silver limit. It's clear under this court's decision in nutrition management that the plan document, the governing ERISA plan, has to be the plan trust, the summary plan description, and the funds, their documents specified. It has to have specific amounts set forth. So it has to be signed and entered into an agreement between the employer and the union of the fund. We don't have those issues here. There is no interpretation that the counsel to the fund can make that are any different than what their trust documents say. And it says clearly that there has to be a collective bargaining agreement entered into with the employer and the union specifying amounts of contributions. The EPP is not an ERISA plan. If any interpretation of the EPP would satisfy the requirements of the 515 as an ERISA plan, any decision that even remotely reflects that will turn ERISA straight on its face. It will be a gutting of the statute. Judge Park, your adversary says that some of the terms of the ERISA plan can be, I don't know, adopted or imported from outside sources, such as the EPP. But in particular, he cites the Grimo case. Can you address that? Well, our position is that unless there is a collective bargaining agreement or some other agreement akin to that, that specifically states, according to this court's decision in Silverman and nutrition management, is that there has to be specific language that the employer is bound to the terms of the trust agreement and the plan documents. Excuse me, you have one minute left. I'm sorry. The EPP falls extremely short of that criteria. The EPP has no mention of any contributory pension terms. It has no mention whatsoever of any obligation for the employer to be bound to the fund or the union according to their trust documents, rules, and regulations and procedures. It's silent. It's deafening how silent it is. There's no reference at all to contribution rates, high risk. And not only that, the EPP, as the district court has ruled in their decision, is that the EPP provides for other recourses of contributions to various other collective bargaining agreements, not necessarily this agreement. It provides no clear evidentiary guidance for this court that satisfies 515 of ERISA, that the employer, which it did not do, has never signed a document, not a CBA, not the trust document, not the plan summary, nor in the EPP language, does it mention anything about any specific contribution level, rate, time it's due, dates, anything in years subsequent to the contract. It's silent on any contributions. So it's my position, Your Honor, that with respect to outside resources, particular to the case at hand, the EPP provides no guidance and it provides no application that this employer agreed to be bound to the fund, to its trust documents, to its plan documents, or any pension contribution levels or rates. So I would say no. In this case, there is no outside resources that would provide any guidance. And the fact of the matter is, is that the EPP is not an ERISA plan. It does not meet any of the criteria, nor come close to meeting Section 15 of ERISA. All right. Any further questions for Mr. Millman? Mr. Kaplan. Good afternoon, Your Honor. May it please the Court, Michael Kaplan from Loewenstein & Sandler, on behalf of Quality and Product. I'd like to pick up where my co-counsel left off and simplify the issue as it relates at least to our clients and I believe Mr. Millman's clients as well, which is, very simply, the question that this court has to answer for us today is whether or not our clients have an obligation to contribute under ERISA in light of, you know, under a CBA plan terms or governing documents. The answer is no. And in fact, counsel for the appellant stated, you know, was talking about direct contracts. The record is clear here. There's no ambiguity. There are no direct contracts between riding quality on the one side and 1181 on the other side. Indeed, the only contract here is the EPP. And so, Your Honor, as well, the issue of third-party beneficiary status, you know, was raised. That claim as well would be futile, and it would be futile simply for this reason, which is that assuming that you are a third-party beneficiary of a contract, that entitles you to potentially enforce the terms of the contract. The relevant contract here, which is the EPP, does not require pride and quality to make contributions to 1181. There's no contractual term that says you have to make it to 1181. And so the arguments here for us, we agree wholeheartedly with the DOE and co-counsel, and we believe the district court was correct in all respects, that there is no contractual obligation that requires our clients to make it and to make such a contribution. It certainly is not the EPP. It's certainly not the terms of an ERISA plan. We know it's not a CBA. And even under the third-party beneficiary argument, that argument results in the same conclusions. And so unless the panel has any questions, we would be happy to rest on our submissions and return the remainder of our time. Thank you. Judge Clark? Judge LaValle? No questions. Thank you. No questions. Oh, I would, yes. No, I would like to ask for an elaboration of the last thing that counsel was saying. So what could the contractors be required to do under the EPP on the theory that the fund was a third-party beneficiary as opposed to making contributions? What would a successful suit to enforce the contract on a third-party beneficiary theory, what would it result in that is different from payment of contributions? Yeah. Your Honor, to answer that question, we would need to see exactly what. So I think the first part is to look at what the specific language of the EPP says, which is that pride and quality has to make contributions to essentially, we'll call it, we'll say a fund for the purposes of this hypothetical. And, in fact, they do. But to the extent that there was, that the 1181 attempted to sue under that particular provision to say that, I guess they would have to sue and say that the contract requires contributions to their fund. Ultimately, we believe that suit would be unsuccessful because the contract simply just doesn't say it. But, in essence, I guess they could sue to determine whether or not contributions were being made. I'd argue that they don't have the appropriate standing to do so because there is no injury to them in the sense that we're not required to make contributions. Again, that's why I labeled it as futile. I don't think there would be a successful claim to be brought, but it would be a state law claim to the extent that someone tried to bring it. And those are the claims that Judge Corman declined to, or arguable claims, that Judge Corman declined to address. Is that right? Yes, Your Honor, that is correct. Judge Corman chose not to exercise supplemental jurisdiction. Yes, right. Okay. Well, thank you, Mr. Kaplan. And Mr. Swires has reserved three minutes rebuttal. Yes, thank you, Your Honor. I'll work backwards. There was just discussion that the EPPs provide no clear evidence of this or that. I want to remind the court that this case was dismissed on a motion to dismiss at the pleading stage. So no evidence was offered whatsoever. And not to get into the merits, but the last two counsel that spoke said that the EPPs didn't provide anything specific on contributions. And that's just simply not true. The EPP says that they don't dispute that they signed the contract. It says if you get a former 1181 participant, that they shall participate in not just any fund, but the 1181 fund, and shall pay contributions to the fund on behalf of those participants. And it gives rates. It gives specific rates. And so I was waiting to hear how they say that that doesn't apply to them or they're not bound by that. That's what they agreed to do in their contracts. But, again, I want to remind the court that this is at the pleading stage. The court did not evaluate what the EPP provided or how it was important or how it related to the plan. There were allegations about the participants and the trustees. They rely on it for a variety of purposes, including the EPP gives rights in terms of continued participation in the plan. It says that the employees will continue to participate in the 1181 fund when they go work for these contractors. So just addressing that. Going a bit further, Ms. Hill for the DOE, in discussing the fiduciary breach claim, argued that the district court considered named fiduciary, considered functional fiduciary. And we disagree with that. The district court expressly held that it denied DOE's status as a functional fiduciary because plaintiffs point to nothing in the trust agreement or plan document that gives the DOE powers concerning the fund's management or administration. That's a named fiduciary analysis. That's not a functional fiduciary analysis. I also want to address Ms. Hill's general argument that the EPP and the city that there was this tenuous relationship with the fund. That's not so. The EPP, as I said, is a very unique document. But the EPP specifically mentions the fund, specifically says that these participants will continue to participate in the fund. It specifically states in the DOE's contract that employers shall sign participation agreements with the fund and shall participate on behalf of these employees in our specific funds. So it's not some tenuous relationship. These were express duties. And lastly, and I realize I'm running out of time, Pasternak was cited in support of the district court's dismissal of the EPP plan terms analysis. I just want to add, Pasternak was about whether a stock rights plan was an ERISA plan at all. The issue looked at there was whether or not a stock rights plan established an ERISA plan. And so the elements that the court looked at that I've heard cited by counsel about providing retirement income and being for the primary purpose of providing retirement income, those are the things the courts look at to see whether an ERISA plan has been established at all. Not whether a document such as what was cited in Grimo and insurance companies' policy for processing claims can provide terms of an already existing plan. I think I've hit my limit. I want to ask you a question, Judge LaValle. As I understand the ruling of the district court, it doesn't say that you're not entitled to get this money. It says you're not entitled to get it under ERISA, that there's no part of ERISA that compels you, that compels the payment of this money by the contractors to the plan. It doesn't impair or imply in any way that you don't have the right in state court to proceed under a third-party beneficiary theory to get these payments. They say they have defenses. Whether they do or don't, I don't know. But the import of the district court's decision is not that you're not entitled to the money. It's that ERISA is not the body of law that gives you the remedy to get the money. It simply says that if you have the right to this money, it's because of contract and not because of ERISA. So what's wrong with that? Well, Your Honor, I agree that the district court did not rule out the fund bringing a state claim. But what's wrong with it is that the fund stated plausible claims under ERISA. That's what's wrong with it. The district court's analysis, as detailed in the briefing, was simply wrong on several points. So it's not a question of whether we can go to state court. The point here is that we stated plausible claims under ERISA, and the court didn't let us in the door. The opposing counsel was talking about evidence of this, evidence of that. There's no evidence. We didn't get let in the door. I think the district court is talking about what must be pleaded in a federal court complaint under Iqbal to show facts that could plausibly support the outcome, not talking about the presentation of evidence in the sense of a trial or a motion for summary judgment. Understood, Your Honor. But how can the court possibly judge whether there's been plausible claims under Iqbal when many of the claims, as we point out, were not even looked at under the right standard? So what the court's looking at, what we pled, is the wrong thing for the court to be looking at. Thank you, Mr. Suarez, very much. Thank you, Your Honor. And in 20-4018, we will reserve decision, and I ask the clerk to close court. Court is adjourned.